FILED

2015 Sep-29  PM 02:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMES FRANK HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  5:13-cv-01967-SGC |
| | ) | |
| AVECTUS HEALTH CARE | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, James Frank Hamilton, brings this action against the defendant, Avectus Health Care Solutions, LLC, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and asserting state-law claims for fraud, deceptive trade practices, negligence, wantonness, and outrage. Avectus has moved for summary judgment on all of Hamilton's claims pursuant to Rule 56 of the *Federal Rules of Civil Procedure*.[2] The undersigned has jurisdiction under 28 U.S.C. §§ 636(c), 1331, and 1367. For the reasons stated below, the defendant's motion is due to be **GRANTED**.

## I. Standard of Review

Under Rule 56(a) of the *Federal Rules of Civil Procedure*, summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Rule 73 of the *Federal Rules of Civil Procedure*, the parties have voluntarily consented to have a magistrate judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 38).

[2] Avectus moved for a judgment on the pleadings on all of Hamilton's claims pursuant to Rule 12(c) of the *Federal Rules of Civil Procedure*. (Doc. 13). Because Avectus submitted documents in support of its motion that were not central to Hamilton's complaint, and pursuant to Rule 12(d) of the *Federal Rules of Civil Procedure*, the previously assigned magistrate judge converted the motion into a motion for summary judgment. (Doc. 17).

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment always bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, the non-moving party must "go beyond the pleadings" and point to specific facts in the record to show there is a genuine issue for trial. *Id.* at 324 (citation omitted). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (per curium) (quoting *Anderson*, 477 U.S. at 249). The court must "examine the evidence in the light most favorable to the non-moving party," drawing all inferences in favor of such party. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence.). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citation omitted).

## II. **Factual Background**[3, 4]

Hamilton was injured in an accident on June 28, 2013, and received treatment for his injuries at Huntsville Hospital, where he remained until he was discharged on July 3, 2013. (Doc. 14 at ¶¶ 1, 2; Doc. 29 at ¶¶ 1, 15).  Hamilton's medical bill from Huntsville Hospital totaled $117,581.66.  (Doc. 14 at ¶ 2; Doc. 29 at ¶ 15).  At the time he was discharged, Hamilton did not have health insurance to help pay his medical bills, and he left Huntsville Hospital without paying his bill.  (Doc. 16-3, p. 2; *see also* Doc. 29-8).

Huntsville Hospital contracts with Avectus to coordinate payment from third-party payers for treatment provided by the hospital to patients who were injured in accidents.[5]  (Doc. 14-1; Doc. 29-7; Doc. 37-1 at 54:14-22).  Huntsville Hospital provides Avectus with a list of accident patients, such as Hamilton, and Avectus contacts those patients to determine if a third-party liability insurer or other third-party payer may be responsible for paying their hospital bills. (Doc. 37-4 at 35:22-36:8).  Avectus then communicates with third-party payers regarding payment of a patient's Huntsville Hospital bill but does not pursue payments directly from a patient.  (Doc. 37-1 at 72:19-74:1; Doc. 37-4 at 40:12-22).  Avectus also files hospital liens[6] on behalf of Huntsville Hospital, puts third-party payers on notice of the filed liens, and releases the liens after the hospital has been paid.  (Doc. 37-4 at 44:6-19).  The purpose of Avectus's work is

---

[3] To the extent any factual inferences are drawn, they are drawn in favor of Hamilton, the non-movant.

[4] In his response to the defendant's motion for summary judgment (Doc. 29), Hamilton did not directly respond to the defendant's statement of undisputed facts as required by the initial order (Doc. 9).  Instead, Hamilton included a summary of disputed facts in his response.  (Doc. 29 at ¶¶ 1-24).   Because several of the facts in Hamilton's summary of disputed facts dispute facts Avectus included in its statement of facts, the undersigned will not deem the facts in Avectus's statement to be admitted.

[5] The contract between Huntsville Hospital and Avectus names MedPay Assurance, LLC, which is Avectus's predecessor in interest, and the Healthcare Authority of the City of Huntsville, which does business as Huntsville Hospital, as the parties to the contract.  (*See* Doc. 14-1; Doc. 37-1 at 54:14-22; Doc. 37-4 at 13:23-14:3).

[6] Section 35-11-370 of the Alabama Code  provides a hospital "shall have a lien for all reasonable charges for hospital care [and] treatment" of an injured patient, and the lien applies against any settlement received by the patient on account of his injuries.  Ala. Code § 35-11-370; *see also* BLACK'S LAW DICTIONARY 1064 (Bryan A. Gardner, et al., eds., 10th ed. 2014).

to help the hospital get paid for medical services it provides to accident patients.  (Doc. 37-1 at 12:1-5; Doc. 37-4 at 81:1-5).

An Avectus employee, Amanda Lenderman, is on site at Huntsville Hospital to help coordinate the sharing of information between the hospital and Avectus.  (Doc. 37-1 at 48:1-6, 49:7-12; Doc. 37-4 at 34:15-35:2).  Hamilton contends Lenderman visited his hospital room on July 2, 2013, and spoke to his mother, Melinda Hamilton, about his accident and any possible insurance coverage.  (Doc. 29-1 at ¶¶ 2, 3).  Melinda Hamilton believed Lenderman was a Huntsville Hospital employee because Lenderman wore an HH Health System badge that identified her as a contractor.  (*Id.*; Doc. 29-3).  Hamilton asserts Lenderman asked his mother to complete a form entitled "Huntsville Hospital Financial Statement" and told his mother filling out the form would "help get [Hamilton's] bill paid."  (Doc. 29-1 at ¶¶ 2, 3; Doc. 29-2).  Melinda Hamilton completed the form and returned it on July 8, 2013.  (Doc. 29-1 at ¶¶ 2, 3).

Avectus sent Hamilton a letter dated July 15, 2013.  (Doc. 29-4 at p. 1).  The letter asks for information regarding Hamilton's accident and informs Hamilton "someone else may be responsible for [his] medical bill."  (*Id.*).  The letter explicitly states it "is NOT a collection notice and that [Hamilton] may be receiving [it] prior to receiving any bill or statement from Huntsville Hospital."  (*Id.*).  On July 18, 2013, Hamilton completed a form attached to the letter by providing information about the accident and responsible party and returned the form to Avectus.  (Doc. 29-1 at ¶ 4; Doc. 29-4 at p. 2).  Avectus also contacted Hamilton by phone on July 24, 2013, and Hamilton provided Avectus with insurance information at that time.  (Doc. 29-5 at 95:18-96:8).

On August 2, 2013, Avectus recorded a hospital lien in the Marshall County Probate Office on behalf of Huntsville Hospital.  (Doc. 29-8 at p. 1).  The lien stated Huntsville Hospital

claimed a lien for $117,581.66, the amount due for Hamilton's treatment at the hospital, and it identified Geico Insurance Co.[7] as the party liable for Hamilton's damages. (*Id.*). Avectus mailed a copy of the lien to Hamilton. (*Id.* at pp. 2-3). Avectus then recorded an amended lien on behalf of Huntsville Hospital on August 26, 2013. (Doc. 29-9 at p. 1). The amended lien added State Farm, Hamilton's insurer, as a party who is liable for Hamilton's damages, and is otherwise identical to the original lien. (*Id.*). Avectus mailed a copy of the amended lien to Hamilton. (*Id.* at pp. 2-3).

During the month of August 2013, Hamilton's attorney negotiated with Geico and State Farm regarding a settlement of Hamilton's claims arising from the accident. (Doc. 29-10). After Hamilton's attorney reached a tentative settlement with the insurers, he sent a letter dated August 28, 2013, to both Avectus and Huntsville Hospital regarding a reduction and settlement of Hamilton's hospital bill. (Doc. 29-10). Huntsville Hospital directed Hamilton's attorney to communicate with Avectus regarding a settlement of Hamilton's hospital bill, but Avectus did not have absolute authority from Huntsville Hospital to compromise and settle Hamilton's bill. (Doc. 37-4 at 49:9-19). Huntsville Hospital authorized a reduction of Hamilton's bill, and Avectus instructed Hamilton's attorney to send a check directly to Huntsville Hospital for the agreed-upon amount to settle Hamilton's hospital bill. (Doc. 16-4; Doc. 37-4 at 87:22-88:7). Avectus then filed a release of the hospital lien on behalf of Huntsville Hospital on October 3, 2013. (Doc. 14-7).

Avectus did not own Hamilton's debt to Huntsville Hospital, which was owed to the hospital while Avectus communicated with Hamilton. (Doc. 37-4 at 89:6-8). Both Avectus and Huntsville Hospital contend Hamilton's debt was not in default during the time Avectus communicated with Hamilton and worked on Hamilton's account on behalf of the hospital.

---

[7] Geico is the liability insurer for the party who was responsible for Hamilton's accident. (Doc. 29-4 at p. 2).

5

(Doc. 37-1 at 61:24-62:16; Doc. 37-4 at 64:22-65:12).   Huntsville Hospital paid Avectus a commission for its work on Hamilton's account.  (Doc. 37-1 at 29:12-20; Doc. 37-4 at 33:6-20).

## III. Analysis

Hamilton asserts claims against Avectus under the FDCPA, along with state law claims for deceptive trade practices,[8] fraud, negligence, wantonness, and outrage.  (Doc. 1).  He also seeks injunctive relief.  (*Id.*).  Avectus moved for a judgment on the pleadings on all claims. (Doc. 13).  Because Avectus's brief in support of its motion attached documents that were not central to Hamilton's complaint, the previously assigned magistrate judge converted Avectus's motion into a motion for summary judgment.  (Doc. 17).  Hamilton then took depositions of representatives of both Avectus and Huntsville Hospital, and he relies on portions of those depositions in his opposition to Avectus's motion for summary judgment.  (Doc. 29).  After reviewing all of the arguments and the record, it is clear Hamilton has not established a question of material fact as to any of his claims, and Avectus is, therefore, entitled to summary judgment on all claims.

### A. FDCPA Claims

Hamilton asserts claims against Avectus under the FDCPA based on his allegations Avectus's actions and communications violated certain provisions of the FDCPA.  (Doc. 1 at ¶¶ 19-22).  "Congress enacted the FDCPA to 'eliminate abusive debt collection practices by debt collectors....'"  *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, (11th Cir. 2014) (quoting 15 U.S.C. § 1692(e)).  Accordingly, "'[t]he FDCPA is a remedial statute, and its provisions are to be

---

[8] In his complaint, Hamilton states Avectus "engaged in Deceptive Trade Practices as same are defined by Federal Law."  (Doc. 1 at ¶ 23).  However, the Deceptive Trade Practices Act is a state statute, Ala. Code § 8-19-1, *et seq.*, and Hamilton did not dispute Avectus's characterization of his deceptive trade practices claim as a "state law claim."  (*See* Doc. 14 at p. 2).

liberally construed in favor of consumer debtors.'" *Yeager v. Ocwen Loan Servicing, LLC*, 2015 WL 4474511, at *3 (M.D. Ala. July 15, 2015) (citation omitted).

To prove his FDCPA claims, Hamilton "must establish the following elements: '(1) [Hamilton] has been the object of collection activity arising from consumer debt, (2) [Avectus] is a debt collector as defined by the FDCPA, and (3) [Avectus] has engaged in an act or omission prohibited by the FDCPA.'" *Buckentin v. SunTrust Mortgage Corp.*, 928 F.Supp.2d 1273, 1294 (N.D. Ala. 2013) (quoting *Janke v. Wells Fargo and Co.,* 805 F.Supp.2d 1278, 1281 (M.D.Ala.2011)). Avectus argues it is entitled to a judgment in its favor on Hamilton's FDCPA claims as a matter of law because Hamilton cannot show he has been the object of collection activity and because Avectus is not a debt collector as defined by the FDCPA. (*See* Doc. 14 at pp. 8-14). The undersigned will address each of those arguments in turn.

### 1. Hamilton was not the object of collection activity.

To show he has been the object of collection activity arising from a consumer debt, Hamilton must establish Avectus's communications with him were in connection with an attempt to collect a debt. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). Avectus does not dispute Hamilton's Huntsville Hospital bill qualifies as a debt under the FDCPA. Rather, Avectus contends Hamilton's claim fails as a matter of law because its communications with Hamilton were not in connection with a collection attempt. (*See* Doc. 14 at pp. 10-11; Doc. 37 at pp. 7-12).

To be actionable under the FDCPA, "a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (relying on 15 U.S.C. § 1692(e)). There is no "bright-line rule" for determining if a communication is in connection with a collection attempt. *Yeager*, 2015 WL 4474511 at *4-5; *Parker v. Midland Credit Mgmt., Inc.*, 874 F.Supp.2d 1353, 1356 (M.D. Fla.

7

2012).  But, "if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the [FDCPA]." *Caceres*, 755 F.3d at 1302 (citing *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2nd Cir. 1998)).  Courts have found, however, that "'the [FDCPA] does not apply to *every* communication between a debt collector and a debtor.'"  *Grden*, 643 F.3d at 173 (quoting *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 384-85 (7th Cir. 2010)) (emphasis in original).  Accordingly, even though a debt collector's ultimate purpose may be to induce payment of a debt, that purpose is not dispositive when determining if a debt collector's communication was in connection with a collection attempt. *South v. Midwestern Audit Serv., Inc.*, 2010 WL 5088765, at *5 (E.D. Mich. Aug. 12, 2010); *Gillespie v. Chase Home Finance, LLC*, 2009 WL 4061428, at * 5 (N.D. Ind. Nov. 20, 2009).

Courts consider a number of factors to determine if a communication falls within the scope of the FDCPA, and "the absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." *Gburek*, 614 F.3d at 385.  Other factors courts consider include:

(1)     whether the communication contains a statement identifying it as an attempt to collect a debt, *Gburek*, 614 F.3d at 386 n. 3 (citation omitted); *Yeager*, 2015 WL 4474511, at *7-8;

(2)     if the communication's purpose is to make another collection attempt more likely to succeed, *Grden*, 643 F.3d at 173;

(3)     the relationship between the parties, *Gburek*, 614 F.3d at 385 (citing *Ruth v. Triumph P'ships*, 577 F.3d 790, 799 (7th Cir. 2009)); and

(4)     the content and context of the communication,  *Gburek*, 614 F.3d at 386; *Caceres*, 755 F.3d at 1303; *Reese*, 678 F.3d at 1217.

A communication's content is viewed objectively when determining if the communication was in connection with a collection attempt.  *Ruth*, 577 F.3d at 798.  Courts also recognize a

communication may serve more than one purpose.  *See Reese*, 678 F.3d at 1218; *Parker*, 874 F.Supp.2d at 1356. Therefore, a communication made to satisfy the requirements of Alabama's hospital lien statute may still qualify as a collection attempt under the FDCPA.

Hamilton asserts he has been the object of several different "collection attempts" by Avectus.[9]  (Doc. 29 at ¶¶ 2, 17-20, 22).   According to Hamilton, Avectus's first collection attempt occurred on July 2, 2013, when an Avectus employee visited Hamilton's room in Huntsville Hospital.  (Doc. 29 at ¶ 2 and pp. 5-6).  Hamilton contends Avectus gave his mother a form requesting information about his finances and accident and told his mother filling out the form would help get his bill paid.  (Doc. 29 at pp. 5-6; Doc. 29-1 at ¶ 2).  Hamilton argues this communication was a misleading collection effort because its animating purpose "was to induce him to settle his debt with Huntsville Hospital" and "the information requested by Avectus would make [it] more successful in collecting the hospital lien."  (Doc. 29 at p. 6).

It is unclear how the content of Avectus's July 2nd communication leads Hamilton to conclude its animating purpose was to induce him to settle his debt with Huntsville Hospital. There is no evidence Hamilton had been issued a bill from the hospital by July 2nd, much less any evidence his debt was already due or in default.  Accordingly, the relationship between the parties weighs against a conclusion the communication was in connection with a collection attempt.  *See Gburek*, 614 F.3d at 385 (citing *Ruth*, 577 F.3d at 799).  Additionally, it is unclear how seeking information about other parties who may be responsible for paying Hamilton's medical bill could be designed to induce Hamilton himself to pay his debt.  Similarly, although the information Avectus sought in the July 2nd communication may have led to the filing of

---

[9] Although Hamilton characterizes Avectus's communications with him as "collection attempts," the undersigned is not required to accept that as true for purposes of Rule 56.  *See Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("To survive summary judgment, the plaintiff must [] present concrete evidence in the form of specific facts.…   Mere conclusory allegations and assertions will not suffice.")

hospital liens on behalf of Huntsville Hospital, the liens applied against third parties and not

Hamilton.  Therefore, the communication was not designed to induce payment from Hamilton or

make another collection attempt against Hamilton more likely to succeed.  As a result, Hamilton

has not shown Avectus's July 2nd communication was made in connection with a collection

attempt.

Avectus's next communication with Hamilton was a letter dated July 15, 2013.  (Doc. 29

at ¶¶ 17, 18 and p. 6).  In that letter, Avectus requests information from Hamilton about his

accident and states "someone else may be responsible for [your] medical bill."  (Doc. 29-4 at p.

1).  The letter also includes the following:

> "Huntsville Hospital provides this service in order to assist in the coordination of
> insurance benefits when your insurance company or another party is responsible
> for your bill.  Please note that this is NOT a collection notice and that you may be
> receiving this letter prior to receiving any bill or statement from Huntsville
> Hospital."

(*Id.*).  A form included with the letter requested details about Hamilton's accident, Hamilton's

insurance, and the party responsible for Hamilton's accident.  (*Id.* at p. 2).  Hamilton argues

"[a]pplying the 'least-sophisticated consumer' standard, this letter was clearly meant to induce

payment by Mr. Hamilton," and "the animating purpose of this letter is to make Mr. Hamilton

aware of his debt and the need to pay it."  (Doc. 29 at p. 6).

As an initial matter, the Eleventh Circuit applies the "least sophisticated consumer

standard" to the issue of whether a communication was false, deceptive, or misleading, and not

to the issue of whether a communication was made in connection with the collection of a debt.

*See Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1301-03 (11th Cir. 2014) (examining the

content of a letter objectively to determine if it was an initial communication under the FDCPA

and applying the least sophisticated consumer standard to the question of if the communication

was false, deceptive, or misleading).  Instead, the undersigned will examine the content of the July 15th letter from Avectus to Hamilton objectively to determine if it was sent in connection with a collection attempt.  *See id.*; *Reese*, 678 F.3d at 1217-18 (examining the content of a letter objectively to determine if it was a communication in connection with the collection of a debt); *Ruth*, 577 F.3d at798 (holding "whether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact).

The July 15th letter from Avectus is similar to a letter the Southern District of Illinois considered in *Gould v. ClaimAssist*, 876 F.Supp.2d 1018 (S.D. Ill 2013).  In *Gould* as in this case, the plaintiff was injured in an accident and received treatment at a hospital that contracted with a company, ClaimAssist, to process third-party payer claims.  *Id.* at 1020-21.  ClaimAssist sent Gould a letter stating it partnered with the hospital to process his medical bill and requesting Gould complete and return an attached accident information form.  *Id.* at 1020.  Gould brought an FDCPA claim against ClaimAssist and argued the letter was a misleading collection attempt. *Id.* at 1020-21.  ClaimAssist moved for summary judgment on the plaintiff's FDCPA claim based in part on its argument the letter was not sent in connection with the collection of a debt.

Similar to Hamilton's arguments in this case, Gould argued he interpreted ClaimAssist's letter as an attempt to collect a debt.  *Id.* at 1023.  The district court rejected Gould's argument and, after evaluating the content of the letter objectively, held Gould's interpretation of the letter as a collection attempt was not reasonable.  *Id.* at 1024-25.  Specifically, the court noted the letter included no demand for payment, stated processing healthcare claims can be complex, and requested information about Gould's accident and insurance.  *Id.*  Accordingly, the court found "every indication is that the letter is collecting information to process third-party-payor claims." *Id.* at 1025.  In addition, the district court noted Gould's debt to the hospital was not in default,

which "supports a conclusion that the defendant's letter was not a communication in connection with the collection of any debt." *Id.* at 1024.

The analysis of the defendant's letter in *Gould v. ClaimAssist* is well-reasoned and persuasive. Just as the defendant's letter in *Gould*, Avectus's July 15th letter to Hamilton does not contain a demand for payment or any payment details, states the information is to assist in the coordination of insurance benefits, and seeks information about Hamilton's accident and insurance. (Doc. 29-4 at p. 1). Additionally, in this case, the July 15th letter does not contain any information about the amount due to the hospital and expressly states it is not a collection notice. (*Id.*). Consequently, the undersigned finds the purpose of the July 15th letter was to request information to help Avectus process third-party payer claims on behalf of Huntsville Hospital and not to induce Hamilton to pay his debt. Therefore, the July 15th letter was not sent in connection with a collection attempt.[10]

Finally, Hamilton characterizes the hospital lien and amended hospital lien Avectus filed on behalf of Huntsville Hospital as collection attempts and asserts "Avectus continued its collection efforts when it required Mr. Hamilton's attorney to negotiate directly with Avectus." (Doc. 29 at ¶ 22 and pp. 6, 7). Both the hospital lien and the amended hospital lien state the amount due on Hamilton's account with Huntsville Hospital, but neither includes a demand for payment or any payment details. (Doc. 29-8 at p. 1; Doc. 29-9 at p. 1). Moreover, the liens identify Geico and State Farm as the entities liable for Hamilton's damages. (*Id.*). Accordingly, the undersigned is not persuaded by Hamilton's argument the liens were "designed to induce Mr. Hamilton to settle his debt." (Doc. 29 at p. 6).

---

[10] Avectus contacted Hamilton by telephone on July 24, 2013, and Hamilton gave Avectus insurance information during that call. (Doc. 29-5 at 95:18-96:8). Hamilton characterizes the call as a collection attempt, but he has not provided any detail about the content of the call. (Doc. 29 at ¶ 18). Accordingly, he cannot establish the call was made in connection with a collection attempt.

Likewise, the undersigned is not persuaded Avectus's communications with Hamilton's attorney were a collection attempt or in connection with a collection attempt for purposes of the FDCPA.   Hamilton cites no authority for the proposition communications with a debtor's attorney could be actionable under the FDCPA.   Additionally, the record shows the communications between Avectus and Hamilton's attorney were regarding a settlement of Hamilton's claims with Geico and State Farm and a compromise of Huntsville Hospital's lien against the settlement proceeds.   (Doc. 16-4; Doc. 29-10).   There is nothing in the communications to show their purpose was to induce Hamilton himself, rather than the third-party payers, to pay Hamilton's debt to the hospital.   As a result, the communications are not in connection with a collection attempt.

Here, just as in *Gould*, every indication is that the purpose of Avectus's communications with Hamilton and his representatives was to collect and process information about third-party payer claims.   There is nothing in the communications to suggest the purpose of the communications was to induce Hamilton himself to pay his debt to the hospital.   To avoid summary judgment, Hamilton needed to come forward with specific facts to show there was a genuine issue of fact regarding whether Avectus's communications were in connection with the collection of a debt.   He did not, and, accordingly, Hamilton's FDCPA claims fail as a matter of law.   Even if Avectus's communications were in connection with the collection of a debt, Avectus is still entitled to a judgment in its favor on Hamilton's FDCPA claims because Avectus does not qualify as a debt collector under the FDCPA.

## 2. Avectus is not a debt collector as defined by the FDCPA.

For Hamilton to have viable FDCPA claims against Avectus, he must establish Avectus is a debt collector within the meaning of the statute.   *E.g. Buckentin*, 928 F. Supp. 2d at 1294

(citation omitted).   To determine if Avectus is a debt collector under the FDCPA, the undersigned "'begins where all such inquiries must begin:  with the language of the statute itself.'"  *Reese*, 678 F.3d at 1216 (citation omitted).  The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The FDCPA expressly excludes from its definition of debt collector any entity that obtained a debt before it was in default.  15 U.S.C. § 1692a(6)(F)(iii) ("The term [debt collector] does not include […] any person collecting or attempt to collect any debt owed … another to the extent such activity … concerns a debt which was not in default at the time it was obtained by such person.").  An entity may obtain a debt when it "acquires the authority to collect the money on behalf of another."  *Carter v. AMC, LLC*, 645 F.3d 840, 844 (7th Cir. 2011).

Avectus argues it is not a debt collector under the FDCPA, relying on *Gould* to support its argument.  (Doc. 14 at pp. 12-13; Doc. 37 at pp. 14-15).  The facts of *Gould* are similar in many respects to the facts of this case, with at least one notable exception.  In *Gould*, the district court held the defendant was not a debt collector in part because there was "no evidence that defendant ever obtained plaintiff's debt from the [h]ospital or that it otherwise acquired 'authority to collect the money on behalf of another.'"  876 F.Supp.2d at 1022.  In this case, however, there is evidence Avectus may have acquired authority to collect money on behalf of Huntsville Hospital.   Specifically, the contract between Avectus and Huntsville Hospital provides "[Avectus] shall collect payment from third parties and shall direct payment to the provider" and "from time to time the parties anticipate [Avectus] may be paid directly, in such

14

event, [Avectus] shall within thirty (30) days pay the provider all sums received…." (Doc. 14-1 at ¶ 2.2).  The contract also gives Avectus "authority to act as [the hospital's] agent for the purposes of negotiating and settling any and all Unpaid Medical Fees pursuant to this Agreement…." (*Id.* at ¶ 10.13).  Accordingly, there is evidence to support a conclusion Avectus obtained Hamilton's debt to Huntsville Hospital when the hospital referred his account to Avectus.

Even if Avectus is in the business of collecting debts and obtained Hamilton's debt, it is not a debt collector for purposes of the FDCPA if the debt was not in default when Avectus obtained it.  15 U.S.C. § 1692a(6)(F)(iii).  "Default" is not a defined term in the FDCPA, and "'the determination of whether a debt is in default [for purposes of the FDCPA] is to be made by a court on a case-by-case basis…."  *Church v. Accretive Health, Inc.*, 2014 WL 7184340, *3 (S.D. Ala. Dec. 15, 2014) (quoting *Kapsis v. American Home Mortg. Servicing, Inc.*, 923 F.Supp.2d 430, 440 (E.D.N.Y. 2013)).

Based on the record, Huntsville Hospital referred Hamilton's account to Avectus either by July 2, 2013, when an Avectus employee visited Hamilton's hospital room to get information about his accident and insurance, or by July 15, 2013, the date of the letter Avectus sent Hamilton requesting the same information.  (*See* Doc. 29-1 at ¶¶ 2-3; Doc. 29-4 at p. 1).  There is nothing in the record to suggest Huntsville Hospital sent a bill to Hamilton prior to those dates, much less that any payment was due to the hospital before those dates.  Indeed, Hamilton did not come forward with any bill issued to him by Huntsville Hospital.  As a result, he cannot show his debt to Huntsville Hospital was in default when his account was referred to Avectus.  Moreover, both Avectus's and Huntsville Hospital's representatives testified Avectus does not work on accounts that are in default.  (Doc. 37-1 at 61:24-62:16; Doc. 37-4 at 64:22-65:12).

To avoid the inescapable conclusion that his debt was not in default when it was obtained by Avectus, Hamilton argues his debt to Huntsville Hospital was in default as soon as he left the hospital without paying his bill because "default" is synonymous with "outstanding."[11] (Doc. 29 at pp. 9-10).   Beyond a citation to the dictionary, however, Hamilton offers no authority to support his argument.  Indeed, his assertion "default" and "outstanding" are synonymous is not a correct statement of the law.   Rather, "[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, emphasizing that only after some period of time does an outstanding debt go into default." *Alibrandi v. Fin. Outsourcing Serv., Inc.*, 333 F.3d 82, 86 (2nd Cir. 2003) (citations omitted); *Church*, 2014 WL 7184340 at *5 ("[The defendant] is correct that case law rejects the proposition 'that default occurs immediately after a debt becomes due.'") (citation omitted); *Gould*, 876 F.Supp.2d at 1023 (rejecting the contention the terms "outstanding" and "default" are synonymous for purposes of the FDCPA) (citations omitted).

In addition, *Hamilton v. Trover Solutions Inc.*, 2003 WL 21105100 (E.D. La. May 13, 2003), a case Hamilton relies on heavily in his brief, does not support Hamilton's argument his debt was in default when Avectus obtained it.   Instead, *Trover Solutions* directly contradicts Hamilton's argument.

In *Trover Solutions*, the plaintiff was injured in an accident in October 1999, and his health insurer, United Healthcare of Louisiana, Inc., paid for his medical care.  *Id.* at *1.  Under the plaintiff's contract with United, United had a right to seek subrogation if the plaintiff

---

[11] Hamilton's argument regarding when his debt went into default ignores his assertion Avectus's collection attempts began while he was still in the hospital.  Other than his contention "Huntsville Hospital and Avectus both knew that Mr. Hamilton lacked health insurance and that payment [for his medical bills] would not be forthcoming," Hamilton does not attempt to explain how his debt could have been in default before he was discharged from the hospital.  It strains credulity to believe Hamilton's debt to Huntsville Hospital could have been in default before a bill was issued and while he was still in the hospital receiving treatment for his injuries.

recovered benefits or damages from any third party, and the insurer contracted with the defendant, Trover Solutions, Inc., for help with enforcing its subrogation rights.  *Id.*  United referred the plaintiff's account to Trover Solutions in December 1999, but the plaintiff did not receive any damages from third parties until February 2000.  *Id.*  Shortly after that, Trover Solutions contacted the plaintiff to enforce United's subrogation rights, and the plaintiff brought an FDCPA claim against Trover Solutions.  *Id.* at *1-2.

Trover Solutions moved for summary judgment on the plaintiff's FDCPA claim on the grounds it was not a debt collector because the plaintiff's debt was not in default at the time it was referred to Trover Solutions.  *Id.* at *2.  In opposition to that motion, the plaintiff argued the exception contained in § 1692a(6)(F)(iii) did not apply to Trover Solutions because the plaintiff's obligation to reimburse United arose before Trover Solutions obtained the debt.  *Id.* at *3.  The district court rejected that argument because it did not address whether the plaintiff's debt was in default when Trover Solutions obtained it, and the court noted "[f]or purposes of § 1692a(6)(F)(iii), the time of default, and not when the obligation is incurred, is the critical time period."  *Id.*  The court then held the plaintiff's debt was not in default when Trover Solutions obtained it because "it was not possible for [the plaintiff] to be in default [under his insurance contract] until he began receiving payments from third parties."  *Id.*  As a result, the district court granted summary judgment in favor of the defendant, and the Fifth Circuit affirmed the district court on appeal.  *Hamilton v. Trover Solutions, Inc.*, 104 Fed. Appx. 942 (5th Cir. 2004)

Following the logic applied by the district court in *Trover Solutions*, Hamilton's debt was not in default when he incurred the obligation to pay Huntsville Hospital.  In other words, his debt was not in default when it was simply outstanding.  Instead, his debt could not have been in default until he received payments from the insurers, which occurred after the hospital referred

his account to Avectus.  Hamilton attempts to distinguish the present case from *Trover Solutions* by noting the plaintiff in *Trover Solutions* had a contract with his insurer granting it subrogation rights to any recovery from third parties, while Hamilton has no such contract with Huntsville Hospital or Avectus.  (Doc. 29 at p. 10).  That is a distinction without a difference because Alabama's hospital lien statute grants Huntsville Hospital an automatic lien for the reasonable value of its medical services.  Ala. Code § 35-11-370.  Thus, just like the insurer in *Trover Solutions*, Huntsville Hospital had a right to be reimbursed for the reasonable cost of Hamilton's medical expenses from any recovery he received from third parties.

There is no evidence indicating Hamilton's debt to Huntsville Hospital was in default when the hospital referred his account to Avectus, but instead the record establishes Hamilton's debt was not in default.  Accordingly, there is no genuine issue regarding whether Hamilton's debt was in default when Avectus obtained it.  As a result, Avectus is not a debt collector for purposes of the FDCPA, and Hamilton's FDCPA claims fail as a matter of law.  Avectus's motion for summary judgment on Hamilton's FDCPA claims is due to be granted.

## B. Injunctive Relief

In addition to asserting claims under the FDCPA, Hamilton requests that the court issue a preliminary injunction requiring Avectus to include "the statutory language" prescribed in the FDCPA in all of its "collection correspondence" and lien filings.  (Doc. 1 at ¶ 21).  Because Hamilton's FDCPA claims fail as a matter of law, he is not entitled to injunctive relief.  *See Palmer v. Braun*, 287 F.3d 1325, 1335 (11th Cir. 2002) (affirming a district court's denial of a plaintiff's request for preliminary injunction when the plaintiff did not clearly establish a likelihood of success on the merits of the underlying claim).

Moreover, "equitable relief is not available in private actions under the FDCPA." *Hennington v. Greenpoint Mortg. Funding, Inc.*, 2009 WL 1372961, at *6 (N.D. Ga. May 15, 2009) (citing *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982)). Consequently, Hamilton's request for injunctive relief fails as a matter of law, and Avectus is entitled to summary judgment on Hamilton's claim for injunctive relief.

### C. State Law Claims

Hamilton asserts state law claims against Avectus for fraud, deceptive trade practices, negligence, wantonness, and outrage.  (Doc. 1 at ¶¶ 23, 26, 28, 29, 30).   In its motion for summary judgment, Avectus argues Hamilton "failed to provide any factual content [in support of his state law claims] that would allow the Court 'to draw the reasonable inference that [Avectus] is liable for the misconduct alleged,'" for which reason Hamilton's state law claims are due to be dismissed.    (Doc. 14 at p. 15).   In opposition to Avectus's motion, Hamilton simply states he "can provide factual content for his claims of negligence, wantonness, fraud, and outrage that are sufficient to allow the Court to draw the reasonable inference that Avectus is liable for the alleged misconduct," and he elaborates on facts supporting his fraud claim.  (Doc. 29 at p. 11).

Hamilton did not make any arguments or point to any evidence to support his state law claims for deceptive trade practices, negligence, wantonness, and outrage against Avectus.  (*See* Doc. 29 at 11-12).   As a result, Avectus argues Hamilton abandoned those state law claims, and it is entitled to summary judgment on those claims.  (Doc. 37, at pp. 17-18).   After reviewing Hamilton's brief and the evidence submitted with it, the undersigned agrees Hamilton did not rebut Avectus's argument Hamilton's state law claims lack factual and legal support.   Indeed, even though Hamilton took depositions of the corporate representatives of both Avectus and

Huntsville Hospital, the undersigned finds nothing in the record to support Hamilton's claims for deceptive trade practices, negligence, wantonness, and outrage against Avectus.  Moreover, it is Hamilton's burden to point to specific evidence in the record to support his claims and show there is a genuine issue of fact for trial.  *See Celotex Corp.*, 477 U.S. at 322.  Hamilton has not met his burden, and Avectus is entitled to summary judgment on Hamilton's claims for deceptive trade practices, negligence, wantonness, and outrage.

Hamilton's fraud claim does not fare any better.  "'The elements of fraud [under Alabama law] are (1) a false representation (2) of a material existing fact (3) reasonably relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation.'"  *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1160 (Ala. 2003) (quoting *Padgett v. Hughes*, 535 So.2d 140, 142 (Ala. 1998).  Hamilton points to the following facts to support his fraud claim:

> "Ms. Lenderman, an Avectus employee, visited Mr. Hamilton in his hospital room on July 2, 2013.  She had a Huntsville Hospital badge[,] and she did not identify herself as an employee of Avectus.  Mr. Hamilton was sedated on pain medications at the time of the visit; he later completed the 'Huntsville Hospital Financial Statement' form and returned it thinking it was provided by Huntsville Hospital and not Avectus.  He had no knowledge of his rights under the FDCPA and suffered damages as a result of Avectus'[s] fraudulent conduct."

(Doc. 29 at pp. 11-12) (internal citations omitted).

Those facts do not establish Avectus made a false representation.  Although Lenderman may not have identified herself as an employee of Avectus, her Huntsville Hospital badge states she is a contractor.   (Doc. 29-3).  Thus, Lenderman did not make any false representation simply by wearing her badge.  Additionally, even if Lenderman told Melinda Hamilton that filling out the "Huntsville Hospital Financial Statement" form would help get her son's bill paid, there is nothing to suggest that statement was false.

Moreover, even if Avectus's actions and representations reasonably led Hamilton to believe he was providing information to Huntsville Hospital rather than Avectus, he has not established any such misrepresentations were material or the proximate cause of any alleged damages.   Indeed, whether Hamilton provided information about his accident to Avectus or Huntsville Hospital would have no impact on the hospital's right to a lien against Hamilton's recovery from third parties on account of his injuries or the amount of the hospital lien.  *See* Ala. Code § 35-11-370.   As a result, he cannot show any misrepresentation by Avectus was a proximate cause of any alleged damages.

Hamilton has not met his burden of proving there is a genuine issue of material fact for trial regarding his fraud claim because he did not show Avectus made a false representation of material fact or that any alleged misrepresentations were the proximate cause of his alleged damages.  Avectus is entitled to summary judgment on Hamilton's fraud claim.

## IV. Conclusion

Based on the foregoing, Avectus's motion for summary judgment (Doc. 13) is due to be **GRANTED**, and Hamilton's claims are due to be **DISMISSED WITH PREJUDICE**.   A separate order will be entered.

**DONE** this 29th day of September, 2015.

*Staci G. Cornelius*
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE